1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   PATRICIA FOX, O.D.,                No.  2:16-cv-2456-JAM-DB

12            Plaintiff,

13       v.                             **ORDER GRANTING PLAINTIFF'S**
                                        **MOTION FOR PRELIMINARY**
14   VISION SERVICE PLAN; DOES 1-       **INJUNCTION**
     10, inclusive,
15
              Defendant.
16

17       Plaintiff Patricia Fox, O.D. ("Fox") filed suit in state

18   court to prevent Defendant Vision Service Plan ("VSP") from

19   enforcing its audit against Fox "due to the failure to provide

20   Fox with a lawful dispute resolution mechanism."  Compl. ¶¶ 40,

21   41, ECF No. 1-1.  VSP removed the case to federal court.  ECF No.

22   1.  Fox filed a motion for preliminary injunction, ECF No. 16,

23   which VSP opposed, ECF No. 18.  The Court held a hearing on Fox's

24   motion for preliminary injunction on February 7, 2017.  ECF No.

25   21.  The Court ordered simultaneous supplemental briefing.  Id.

26   Each party filed a brief, ECF Nos. 22, 23, which the Court has

27   considered.  The Court issued a minute order on February 9, 2017

28   granting Fox's motion for preliminary injunction.  ECF No. 24.

                                    1

The Court gave VSP the opportunity to file a supplemental brief
on a case Fox cited only in her reply.  Id.  The Court has
considered VSP's supplemental brief on that issue.  This Order
sets forth in greater detail the bases for the Court's decision
to grant Fox's motion for preliminary injunction.


    I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

    Fox, a Massachusetts licensed optometrist, "was a contracted
doctor" with VSP.  Compl. ¶ 1.  VSP, a non-profit California
corporation with its principal place of business in Rancho
Cordova, California, provides vision insurance plans to millions
of people in the United States.  Compl. ¶ 2; Answer ¶ 2, ECF No.
15.

    Fox renewed her contract, the Network Doctor Agreement
("NDA"), with VSP in August 2015.  Compl. ¶ 13.  The NDA states:

    11. Fair Hearing Procedure/Binding Arbitration

        a. Fair Hearing.  In the event of a dispute as to
           VSP's imposition of any applicable disciplinary
           action against Network Doctor ["ND"],
           [ND] . . . may appeal such action in accordance
           with the provisions and requirements, including
           the payment of fees and costs, set forth in the
           VSP Peer Review Plan and Fair Hearing Policy
           ["FHP"], as may be amended or replaced from
           time to time, and incorporated herein by
           reference . . .

        b. Binding Arbitration.  If the above process does
           not resolve the dispute, then, unless expressly
           disallowed by state law, any party may request
           final determination and resolution of the
           matter by mandatory binding arbitration . . .

NDA at 15, Fox Decl. Exh. 1, ECF No. 16-2.

    The NDA states that it incorporates the FHP by reference,
NDA at 15, but VSP did not attach the FHP, a separate twenty-page

1   document to the NDA, see Fox Decl. ¶ 5, Exh. 3 ("FHP"), ECF No.

2   16-2.  The FHP, but not the NDA, indicates how a provider can

3   obtain the FHP.  Id.

4        In May 2016, VSP audited Fox and sent her a letter with the

5   results.  Wasylkiw Decl., Exh. E ("Audit Letter").  In the

6   letter, VSP demanded "repayment of improper claims submitted to

7   VSP" and repayment for the cost of the audit.  Audit Letter at 2.

8   The letter required Fox to pay $444,147 in "restitution" and

9   terminated Fox's NDA.  Id. at 2-3.

10       On June 6, 2016, Fox "timely requested a hearing through the

11  VSP dispute resolution process."  Compl. ¶ 35.  VSP set

12  arbitration for November 4, 2016.  Id.  VSP rescheduled that

13  hearing to February 10, 2017.  10/26/2016 Stipulation at 2, ECF

14  No. 12.  The Court enjoined VSP from holding the February 10

15  dispute resolution hearing, and this Order sets forth the Court's

16  reasons for granting Fox's motion for a preliminary injunction.

17

18                        II.  OPINION

19       A.  Legal Standard

20       A court may award a preliminary injunction—an "extraordinary

21  remedy"—only "upon a clear showing that the plaintiff is entitled

22  to such relief."  Winter v. Nat. Res. Def. Counsel, Inc., 555

23  U.S. 7, 22 (2008).  To obtain a preliminary injunction, a

24  plaintiff must show: (1) she will likely succeed on the merits,

25  (2) she will suffer irreparable harm without preliminary relief,

26  (3) the balance of equities tips in her favor, and (4) an

27  injunction is in the public interest.  Boardman v. Pac. Seafood

28  Grp., 822 F.3d 1011, 1020 (9th Cir. 2016) (quoting Winter, 555

1  U.S. at 20).  Issuance of an injunction does not absolutely

2  require a likelihood of success on the merits.  <u>All. for the Wild</u>

3  <u>Rockies v. Cottrell</u>, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

4  "Rather, serious questions going to the merits and a hardship

5  balance that tips sharply toward the plaintiff can support

6  issuance of an injunction, assuming the other two elements of the

7  <u>Winter</u> test are also met."  <u>Drakes Bay Oyster Co. v. Jewell</u>, 747

8  F.3d 1073, 1085 (9th Cir. 2014) (internal quotation marks

9  omitted).

10     Fox argues the Court should grant her motion for preliminary

11  injunction to preserve the status quo "until the Court determines

12  if the dispute resolution process is legal and enforceable."

13  Mot. at 2.

14     B.   <u>Analysis</u>

15          1.   <u>Likelihood of Success on the Merits</u>

16     Fox contends she can likely prove that VSP's dispute

17  resolution process is unenforceable for two reasons: (1) it

18  violates California Code of Regulations § 1300.71.38; and (2) it

19  is unconscionable.  Mot. at 2.

20               a.   <u>Violation of § 1300.71.38</u>

21     California Health and Safety Code § 1367 states that "[a]ll

22  contracts with providers shall contain provisions requiring a

23  fast, fair, and cost-effective dispute resolution mechanism

24  under which providers may submit disputes to the plan."  Cal.

25  Health & Safety Code § 1367(h)(1).

26     The California Code of Regulations implements § 1367.

27  Section 1300.71.38 of the regulations further defines the phrase

28  "fast, fair, and cost-effective dispute resolution mechanism,"

explaining that "[a]rbitration shall not be deemed a provider dispute or a provider dispute resolution mechanism."  Cal. Code Regs. tit. 28, § 1300.71.38.

The Federal Arbitration Act ("FAA") conflicts with § 1300.71.38's ban on using arbitration as a dispute resolution mechanism.  The FAA states that an arbitration provision in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA preempts contrary state law, so a court cannot apply "any state statute that invalidates an arbitration agreement."  Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 932 (9th Cir. 2013). Fox concedes that the FAA preempts § 1300.71.38, but she argues the McCarran-Ferguson Act ("McCarran-Ferguson") "reverse-preempts" § 1300.71.38.  Mot. at 7.

VSP contends § 1300.71.38 does not invalidate the FHP for three reasons: (1) § 1300.71.38 does not apply; (2) the FHP does not violate § 1300.71.38; and (3) McCarran-Ferguson does not reverse-preempt § 1300.71.38.  Opp'n at 1.

i.   Whether § 1300.71.38 Applies

VSP argues § 1300.71.38 does not apply to its dispute with Fox because "§ 1300.71.38 only applies to a defined subspecies of 'provider disputes.'"  Opp'n at 5.  Section 1300.71.38(a)(1) defines "Contracted Provider Dispute" as

> a contracted provider's written notice to the plan
> . . . challenging, appealing or requesting
> reconsideration of a claim . . . that has been denied,
> adjusted or contested or seeking resolution of a
> billing determination or other contract
> dispute . . . or disputing a request for reimbursement
> of an overpayment of a claim.

5

1    Cal. Code Regs. Tit. 28, § 1300.71.38(a)(1).

2      VSP argues "[t]he definition of 'provider dispute' does not

3 include appeal of an adverse action taken or discipline imposed

4 as a result of a fraud investigation." Opp'n at 5. VSP adds

5 that "the FHP expressly clarifies that the FHP does not apply to

6 the very disputes Section 1300.71.38 applies to, for which a

7 separate 'fair, fast, and cost-effective resolution mechanism'

8 has been established." Id. The FHP does indeed indicate that

9 it "does not apply to ordinary provider Claim Disputes." FHP at

10 2.

11      Fox replies that California law defines "Contracted

12 Provider Dispute," not VSP. Reply at 1. Fox argues that the

13 fact that VSP's demand for reimbursement followed a "fraud

14 investigation" does not make § 1300.71.38 inapplicable because

15 the definition of "Contracted Provider Dispute" "says nothing

16 about the nature of the investigation that led to the dispute."

17 Id.

18      Fox has demonstrated a likelihood of success on this issue.

19 First, the facts of this case track the plain language of the

20 definition of a "Contracted Provider Dispute": Fox, a

21 "contracted provider," sent "written notice" to VSP "seeking

22 resolution" of VSP's demand to pay VSP over $400,000 in

23 restitution. Fox Decl. ¶¶ 2, 9, 12.

24      Second, VSP provides no case law to support its argument

25 that the fact that the dispute arose from a fraud investigation

26 makes § 1300.71.38 inapplicable. VSP also fails to cite any

27 authority to support the argument that the FHP falls outside

28 § 1300.71.38's purview because the FHP states that it does not

1  apply to "ordinary dispute claims."  For these reasons, the

2  Court concludes that Fox will likely succeed in showing that

3  § 1300.71.38 applies to this dispute between the parties.

4            ii.   Whether the FHP Violates § 1300.71.38

5      VSP next argues that, even if § 1300.71.38 applies, the FHP

6  does not violate the regulation.  Opp'n at 6.  VSP contends that

7  the first step in the FHP cannot violate § 1300.71.38 because it

8  is not arbitration.  Id.  VSP relies on Cheng-Canindin v.

9  Renaissance Hotel Associates, 50 Cal. App. 4th 676 (1996), which

10  states "a dispute resolution procedure is not an arbitration

11  unless there is a third party decision maker, a final and

12  binding decision, and a mechanism to assure a minimum level of

13  impartiality with respect to the rendering of that decision."

14  Opp'n at 6 (quoting Cheng, 50 Cal. App. 4th at 687-88).  VSP

15  maintains that "[t]he fact that the hearing procedure is non-

16  binding and subject to review is dispositive of the fact that

17  the hearing procedure is not arbitration, and thus does not fall

18  within the ambit of Section 1300.71.38."  Id.

19      Fox responds that the Ninth Circuit has held that

20  "arbitration need not be binding to fall within the scope of the

21  [FAA]".  Reply at 3 (quoting Wolsey, Ltd. v. Foodmaker, Inc.,

22  144 F.3d 1205, 1209 (9th Cir. 1998)).  The Court finds that VSP's

23  argument that the FHP's first step is not arbitration because it

24  is non-binding fails because it contradicts the Ninth Circuit's

25  statement in Wolsey.

26            iii.  Whether McCarran-Ferguson Reverse-
27                Preempts § 1300.71.38

28      McCarran-Ferguson states that "[n]o Act of Congress shall

1  be construed to invalidate, impair, or supersede any law enacted

2  by any State for the purpose of regulating the business of

3  insurance, or which imposes a fee or tax upon such business,

4  unless such Act specifically relates to the business of

5  insurance."  15 U.S.C. § 1012(b).  The FAA does not

6  "specifically relate[] to the business of insurance."  See Smith

7  v. PacifiCare Behavioral Health of California, Inc., 93 Cal.

8  App. 4th 139, 149 (2001).  The Court must therefore determine

9  whether California enacted § 1300.71.38 "for the purpose of

10  regulating the business of insurance."

11      Fox argues that § 1300.71.38 regulates the "business of

12  insurance" because it "regulates a core promise made by the plan

13  to the insured in the insurance contract: the promise to pay a

14  contracted provider directly on behalf of the insured."  Mot. at

15  12.  Fox contends that "[e]ven if it does not 'directly'

16  regulate the relationship between the insurer and the insured,

17  it surely does so indirectly . . . because the insurer-provider

18  contract is a core promise made by the insurer to its insureds."

19  Id.  Fox also argues that "a state law regulating the claims

20  payment practices ultimately, even if indirectly, furthers

21  significantly the interests of VSP's members by ensuring that

22  the doctors the members go to are paid fairly, and as a result

23  will become and will remain contracted with VSP as in-network

24  providers."  Id. at 13.

25      VSP argues that McCarran-Ferguson does not reverse-preempt

26  § 1300.71.38 because McCarran-Ferguson focuses on "the

27  relationship between the insurer and its policyholders," not the

28  relationship between the insurer and the provider.  Opp'n at 7.

8

1    VSP contends that "[h]ere, just as in Royal Drug and Pireno, the

2    FHP at issue . . . has nothing to do with the relationship

3    between the insurer and the insured, but rather is between the

4    insurer and medical providers." Id. at 10.

5         Fox responds that Royal Drug and Pireno dealt only with

6    McCarran-Ferguson's second clause.  Reply at 4.  The Supreme

7    Court has recognized the distinction between the first and

8    second clauses of the McCarran-Ferguson Act and clarified that

9    Royal Drug and Pireno dealt with only the second.  The Court in

10   U.S. Dep't of Treasury v. Fabe, 508 U.S. 491 (1993) stated:

11        Both Royal Drug and Pireno . . . involved the scope of
          the antitrust immunity located in the *second* clause of
12        § 2(b). We deal here with the *first* clause, which is
          not so narrowly circumscribed. The language of § 2(b)
13        is unambiguous: The first clause commits laws "enacted
          ... for the purpose of regulating the business of
14        insurance" to the States, while the second clause
          exempts only "the business of insurance" itself from
15        the antitrust laws. To equate laws "enacted ... for
          the purpose of regulating the business of insurance"
16        with the "business of insurance" itself . . . would be
          to read words out of the statute. This we refuse to
17        do.

18   Fabe, 508 U.S. at 504.

19        VSP's reliance on Royal Drug and Pireno is misplaced given

20   the Supreme Court's statement in Fabe.  Additionally, Fox can

21   likely show that even if § 1300.71.38 does not directly regulate

22   the relationship between the insurer and policyholders, it

23   indirectly regulates that relationship because the insurer's

24   relationship with the provider is integral to the insurer's

25   relationship with its policyholders.

26        The Court therefore finds that Fox can likely prove that

27   McCarran-Ferguson reverse-preempts § 1300.71.38 and therefore she

28   is likely to succeed on the merits of her first argument that

                                    9

1   VSP's dispute resolution process is illegal because it violates
2   this state regulation.

3

4                b.   <u>Unconscionability</u>

5      "Like other contracts, [an arbitration agreement] may be
6   invalidated by generally applicable contract defenses such as
7   fraud, duress, or unconscionability." <u>Rent-A-Center, W., Inc.,</u>
8   <u>v. Jackson</u>, 561 U.S. 63, 68 (2010) (internal quotation marks
9   omitted). "[T]he party opposing arbitration bears the burden of
10   proving by a preponderance of the evidence any defense, such as
11   unconscionability." <u>Serafin v. Balco Prop. Ltd., LLC</u>, 235 Cal.
12   App. 4th 165, 172 (2015). To prove that an agreement is
13   unconscionable, a litigant must show procedural *and* substantive
14   unconscionability. <u>Id.</u> at 178. "Both, however, need not be
15   present to the same degree." <u>Id.</u> Courts apply "a sliding scale
16   . . . so that the more substantively oppressive the contract
17   term, the less evidence of procedural unconscionability is
18   required to come to the conclusion that the term is
19   unenforceable, and vice versa." <u>Id.</u> (internal quotation marks
20   omitted).

21                i.   <u>Procedural Unconscionability</u>

22      "Procedural unconscionability concerns the manner in which
23   the contract was negotiated and the circumstances of the party at
24   the time." <u>Ferguson v. Countrywide Credit Indus., Inc.</u>, 298 F.3d
25   778, 783 (9th Cir. 2002) (internal quotation marks omitted).
26   "Procedural unconscionability requires either of two factors:
27   oppression or surprise." <u>Net Global Mktg., Inc. v. Dialtone,</u>
28   <u>Inc.</u>, 217 Fed. Appx. 598, 601 (9th Cir. 2007). "Oppression

1    arises from an inequality in bargaining power which results in no

2    real negotiation and an absence of meaningful choice." Id.

3    "Surprise" arises when "the allegedly unconscionable provision is

4    hidden within a prolix printed form." Von Nothdurft v. Steck,

5    227 Cal. App. 4th 524, 535 (2014). Fox claims that both factors-

6    oppression and surprise-are present in VSP's FHP. Mot. at 16.

7         In determining oppression, courts consider whether the

8    stronger party drafted the contract and whether the weaker party

9    could negotiate the contract. Pokorny v. Quixtar, Inc., 601

10   F.3d 987, 996 (9th Cir. 2010). "[A] contract is procedurally

11   unconscionable under California law if it is 'a standardized

12   contract, drafted by the party of superior bargaining strength,

13   that relegates to the subscribing party only the opportunity to

14   adhere to the contract or reject it.'" Id. "Although adhesion

15   contracts often are procedurally oppressive, this is not always

16   the case." Morris v. Redwood Empire Bancorp, 128 Cal. App. 4th

17   1305, 1320 (2005). Additionally, the Ninth Circuit has recently

18   stated that "the adhesive nature of a contract, without more,

19   would give rise to a low degree of procedural unconscionability

20   at most." Poublon v. C.H. Robinson Co., 2017 WL 461099, at *5

21   (9th Cir. Feb. 3, 2017). So, a court must also "question

22   whether there are other indications of oppression or surprise"

23   that create procedural unconscionability. Id.

24        Fox first argues that the FHP is oppressive because "[t]here

25   is *no negotiation* in this contract—it is drafted by VSP, mailed

26   to the doctor, she is told to sign it and return it, or lose her

27   VSP status." Mot. at 16 (emphasis in original). Fox contends

28   that "[s]he ha[d] *no meaningful choice* but to do as VSP

1  instruct[ed] or lose her VSP contract, and potentially her

2  livelihood given the overwhelming size of VSP and the number of

3  people they insure, including about 40-50% of the patients in Dr.

4  Fox's practice."  Id. (emphasis in original).

5       VSP responds that "at least as early as 2010, each of

6  Plaintiff's three successive NDAs clearly explained, with a bold

7  heading, the two-step FHP at issue."  Opp'n at 2.  VSP also

8  argues that the NDA is not an adhesion contract because Fox had

9  "ample time to review the NDA . . . and could have, but did not,

10 obtain a copy of the FHP prior to signing the NDA."  Id. at 16.

11 VSP emphasizes that Fox's "claim that she did not have the

12 opportunity to negotiate is pure speculation, because she did not

13 even try," and other doctors have proposed changes to the NDA.

14 Id.

15      VSP provides no authority supporting its claim that a

16 contract is not unconscionable if a party has previously seen or

17 signed a similar contract.  Additionally, VSP provides no

18 evidence of any other doctors who have negotiated with VSP

19 concerning the terms of the NDA or FHP or whether VSP has ever

20 accepted any proposed changes to the NDA or FHP.  Also, Fox could

21 not simply reject VSP's contract because VSP dominates the vision

22 insurance market.  If Fox had rejected VSP's contract, she would

23 have lost the 40-50% of her customers that VSP insured.  The

24 NDA's "take-it-or-leave-it" nature makes it at least somewhat

25 procedurally unconscionable, but that alone does not render the

26 dispute resolution provision in the NDA unenforceable.  Poublon,

27 2017 WL 461099, at *5.  The Court therefore turns its focus to

28 whether the NDA or FHP contains additional oppression or

1  surprise.

2      The Ninth Circuit has held that an arbitration agreement

3  contained surprise when the plaintiff "did not sign the

4  arbitration agreement (it was incorporated by reference)."

5  <u>Newton v. Am. Debt Servs., Inc.</u>, 549 F. App'x 692, 694 (9th Cir.

6  2013); <u>see also</u> <u>Pokorny</u>, 601 F.3d at 997 (finding an arbitration

7  agreement procedurally unconscionable in part because the

8  defendant "failed to attach a copy of the Rules of Conduct,

9  containing the full description of the non-binding conciliation

10 and binding arbitration processes, to the registration forms

11 containing the Agreement to Arbitrate"). The <u>Pokorny</u> court

12 reasoned the plaintiffs "were not even given a fair opportunity

13 to review the full nature and extent of the non-binding

14 conciliation and binding arbitration processes to which they

15 would be bound before they signed the registration agreements."

16 <u>Pokorny</u>, 601 F.3d at 997. Additionally, a California court found

17 procedural unconscionability where the defendant "merely

18 referenc[ed] the . . . arbitration rules, and [did] not attach[]

19 those rules to the contract for the customer to review. The

20 customer [had] to go to another source to find out the full

21 import of what she [wa]s about to sign." <u>Harper v. Ultimo</u>, 113

22 Cal. App. 4th 1402, 1406 (2003).

23     Fox argues that the FHP is a "single-spaced 16-page legal

24 contract, likely lawyer-prepared, and provided to an optometrist

25 with no business or legal education whatsoever." Mot. at 16.

26 Fox contends that the NDA does not draw attention to the

27 arbitration provision or require the provider to initial it. <u>Id.</u>

28 Fox also contends that "the failure to provide or attach the fair

hearing procedure" to the NDA constitutes surprise.  Reply at 10.

Like the plaintiffs in Harper and Pokorny, Fox did not have a "fair opportunity" to review the FHP before signing the NDA because VSP did not attach the FHP to the NDA.  Additionally, although the Ninth Circuit found in Poublon that the employment contract that incorporated an arbitration provision by reference but did not attach a copy was not procedurally unconscionable, the NDA differs from the contract in Poublon because there the contract indicated that the arbitration procedure was available on the company's intranet.  Poublon, 2017 WL 461009, at *1.  VSP instructs providers such as Fox how to obtain the FHP only in the FHP itself—the NDA, however, contains no instructions on how to obtain the FHP.

The Court finds that Fox has sufficiently demonstrated a likelihood of success on the merits of her procedural unconscionability argument. The Court, therefore, next addresses the parties' arguments regarding the substantive unconscionability of the FHP.

                    ii.  Substantive Unconscionability

Substantive unconscionability focuses on the results and outcomes of contracts.  Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).  A contract is substantively unconscionable if it creates "overly harsh" or "one-sided" results.  Id.  "[M]utuality is the 'paramount' consideration when assessing substantive unconscionability." Pokorny, 601 F.3d at 997.

Fox argues several FHP provisions render the contract substantively unconscionable.

                                14

**Pre-Appeal Informal Discussion:** The FHP states:

> Within ten (10) days of receipt of a Notice from VSP,
> ND shall contact VSP at the number stated in the
> Notice to discuss the findings and allegations set
> forth in the Notice in a good faith effort to resolve
> the dispute without the need for a Hearing. If the
> parties are unable to reach a resolution of the
> dispute, ND may then request a Hearing.

FHP at 5.

Fox argues "[t]his process is just like" the process in

Nyulassy v. Lockheed Martin Corp., 120 Cal. App. 4th 1267

(2004).   In Nyulassy, the court held that an employment

agreement requiring an employee "to submit to discussions with

his supervisors in advance of, and as a condition precedent to,

having his dispute resolved through binding arbitration" was

substantively unconscionable.   Id. at 1282.   The court stated:

> [w]hile on its face, this provision may present a
> laudable mechanism for resolving employment disputes
> informally, it connotes a less benign goal. Given the
> unilateral nature of the arbitration agreement,
> requiring plaintiff to submit to an employer-
> controlled dispute resolution mechanism (i.e., one
> without a neutral mediator) suggests that defendant
> would receive a "free peek" at plaintiff's case,
> thereby obtaining an advantage if and when plaintiff
> were to later demand arbitration.

Id. at 1282-83.

The Pokorny court also analyzed an arbitration agreement

requiring an individual to engage in "Informal and Formal

Conciliation prior to arbitration."   Pokorny, 601 F.3d at 998.

The court stated that "the non-binding conciliation process

amounts to little more than an exploratory evidentiary hearing

for [the defendant]."   Id. at 999.

VSP argues that its initial discussion is mutual because

the doctor also gets a "free peek" into VSP's claims.   Opp'n at

15

18.   VSP also contends that its pre-appeal requirement differs from the procedure in Nyulassy, which required the employee to "resolve [his] [dispute] through discussions within successive levels of my supervisory chain of command, until the [dispute] [wa]s resolved." Id. (quoting Nyulassy, 120 Cal. App. 4th at 1273 n.4).  Although VSP's pre-appeal discussion requirement indeed differs from the requirement in Nyulassy, the Nyulassy court's concern over that provision exists here too: Fox must "submit to an employer-controlled dispute resolution mechanism . . . without a neutral mediator." Nyulassy, 120 Cal. App. 4th at 1283.  Like the provisions in Pokorny and Nyulassy, the FHP requires the pre-appeal meeting before beginning the next step in the appeal process.  And the pre-appeal provision's language does not support VSP's argument that the informal meeting is mutual—nothing in the FHP requires VSP to provide any information to the ND.

     The Court finds Fox's arguments on her claim that the pre-appeal informal discussion requirement is substantively unconscionable more persuasive than VSP's, although the Court recognizes that this case is at a very early stage of the litigation and all the evidence with respect to this issue has yet to be presented by the parties.

     **Confidentiality Provision:** The FHP contains a confidentiality provision that states:

> All facts, records, data and information acquired in preparation for a Hearing or during the course of a Hearing or Arbitration hereunder shall be used and maintained in strict confidence and shall not be disclosed to any third parties, but may be used by the parties to the extent necessary to carry out the purposes of any final action(s), decision(s), and/or

awards rendered. This confidential information shall
be subject to subpoena or discovery as may be required
by law. These confidentiality provisions shall survive
final actions, decisions, awards and termination of
the NDA.

FHP at 1.

Relying on <u>Ting v. AT&T</u>, 319 F.3d 1126 (9th Cir. 2003) and

<u>Ingalls v. Spotify USA, Inc.</u>, 2016 WL 6679561, at *1 (Nov. 14,

2016 N.D. Cal), Fox argues the FHP's confidentiality requirement

also renders the FHP substantively unconscionable.  Mot. at 20.

<u>Ting</u> states:

Although facially neutral, confidentiality provisions
usually favor companies over individuals. . . AT&T has
placed itself in a far superior legal posture by
ensuring that none of its potential opponents have
access to precedent while, at the same time, AT&T
accumulates a wealth of knowledge on how to negotiate
the terms of its own unilaterally crafted contract.
Further, the unavailability of arbitral decisions may
prevent potential plaintiffs from obtaining the
information needed to build a case of intentional
misconduct or unlawful discrimination against AT&T.
For these reasons, we hold that the district court did
not err in finding the secrecy provision
unconscionable.

<u>Ting</u>, 319 F.3d at 1151–52.  <u>Ingalls</u> also found that a

confidentiality provision in an arbitration contract contributed

to the agreement's unconscionability.  <u>Ingalls</u>, 2016 WL 6679561,

at *7.  <u>Ingalls</u> emphasized that "it [wa]s the pervasiveness of

unconscionability, not any one source of it" that rendered the

agreement unconscionable.  <u>Ingalls</u>, 2016 WL 6679561, at *6.

The <u>Pokorny</u> court also found a confidentiality provision

substantively unconscionable because "while handicapping the

Plaintiffs' ability to investigate their claims and engage in

meaningful discovery, the confidentiality provision does nothing

17

1   to prevent [the defendant] from using its continuous involvement

2   in the [dispute resolution] process to accumulate a 'wealth of

3   knowledge' on how to arbitrate future claims." <u>Pokorny</u>, 601

4   F.3d at 1002 (quoting <u>Ting</u>, 319 F.3d at 1152).

5        As pointed out by VSP, the Ninth Circuit has recently

6   called <u>Pokorny</u> and <u>Ting</u> into question regarding their analyses

7   of confidentiality provisions. VSP Second Supp. Brief at 2-3,

8   ECF No. 26.  In <u>Poublon</u>, the Ninth Circuit stated that <u>Pokorny</u>

9   and <u>Ting</u> "did not rely on California law."  <u>Poublon</u>, 2017 WL

10  461099, at *9.  Post <u>Pokorny</u> and <u>Ting</u>, a California appellate

11  court decided <u>Sanchez v. CarMax Auto Superstores Cal. LLC</u>, 224

12  Cal. App. 4th 398 (2014). In <u>Sanchez</u>, the Court found "nothing

13  unreasonable or prejudicial" about "a secrecy provision with

14  respect to the parties themselves." <u>Sanchez</u>, 224 Cal. App. 4th

15  at 408.  The Ninth Circuit decision in <u>Poublon</u> (which was post

16  <u>Sanchez</u>) emphasized that "[n]ow that we have available data

17  establishing what state law is regarding a closely similar

18  confidentiality provision, we are bound to apply it, even though

19  the state rule may have departed from prior decisions of federal

20  courts." <u>Poublon</u>, 2017 WL 461099, at *9 (internal quotation

21  marks omitted).

22       The confidentiality provisions in <u>Poublon</u> and <u>Sanchez</u>

23  included an exception to the confidentiality requirement, if the

24  "parties agree[d] otherwise." <u>Poublon</u>, 2017 WL 461099, at *7;

25  <u>Sanchez</u>, 224 Cal. App. 4th at 408.  VSP's confidentiality

26  provision however does not provide such an exception.  Also, the

27  FHP confidentiality provision "survives final actions . . . and

28  termination of the NDA."  Simply put, the scope of the

confidentiality provision in the FHP exceeds the scope of the confidentiality provisions in <u>Poublon</u> and <u>Sanchez</u>.

VSP argues that <u>Ting</u> and <u>Ingalls</u> do not apply because the confidentiality provision here does not present the same problems as those provisions in <u>Ingalls</u> and <u>Ting</u> because "[e]ach dispute is specific to the actions of the doctor, not a repeat challenge to the same contractual provision." Opp'n at 20.  But VSP's argument ignores the fact that VSP might discipline doctors across the country for the same actions.  With the confidentiality provision in place, Fox does not have access to any information or any precedents set in cases involving other doctors who have gone through the same dispute resolution process.  VSP, on the other hand, participates in all dispute resolution proceedings with providers and therefore has access to information and precedents set in other hearings.  This is precisely the concern the Ninth Circuit expressed in <u>Pokorny</u>. <u>Poublon</u> and <u>Sanchez</u> do not undermine those concerns because they addressed narrower confidentiality provisions than the one here. Thus VSP's reliance on these two post <u>Pokorny</u> cases is not enough to overcome Fox's arguments concerning the unconscionability of this confidentiality provision.

**Settlement Provision:** Fox's third argument in support of her substantive unconscionability claim focuses on the FHP settlement provision which provides:

> After requesting Arbitration but before selection of an Arbitrator, Claimant shall propose final and binding terms of settlement ("Settlement Proposal") to the other party ("Respondent"). Respondent shall accept or reject the Settlement Proposal. If the Settlement Proposal is accepted by Respondent, the

1       parties shall proceed to execute the terms of the
settlement, forthwith. If the settlement terms cannot
2       be performed in three (3) days of acceptance, the
parties shall reduce the settlement to a writing and
3       sign the settlement agreement. If Respondent rejects
the Settlement Proposal, the case shall proceed to
4       Arbitration. If Claimant obtains an arbitration award
at Arbitration that is greater than the Settlement
5       Proposal, the Claimant shall be deemed the prevailing
party for purposes of an award of arbitration costs,
6       plus an award of attorneys' fees, which fees shall not
exceed $15,000. (California Civil Code Section 1717
7       shall not apply for purposes of determining the
prevailing party.) If the Arbitrator's Award at
8       Arbitration is less than the Settlement Proposal,
Respondent shall be deemed the prevailing party for
9       purposes of an award of arbitration costs, plus an
award of attorneys' fees, which fees shall not exceed
10      $15,000. If Claimant fails or refuses to make a
Settlement Proposal pursuant to this Section, Claimant
11      shall be deemed to have waived his/her/its right to
recovery of any attorney fees or arbitration costs
12      regardless of the terms contained in the NDA or the
fact that the Arbitration Award awards Claimant
13      greater relief than Respondent.

14  FHP at 13-14.

15      Fox argues that because VSP is a "vastly more powerful

16  entity financially, and has its own in-house litigation

17  attorneys, it incurs no actual out-of-pocket legal expenses in

18  arbitration."  Mot. at 21.  Fox further contends that "[t]he

19  doctor, on the other hand, incurs actual attorneys' fees, and is

20  limited in the amount of those fees she can recover even if she

21  prevails completely."  Id.  Fox argues that "[t]his procedure is

22  not only a complete surprise, but profoundly favors VSP and

23  works, along with the seriously inconvenient forum, to chill and

24  create a disincentive for any provider to challenge a fair

25  hearing award through arbitration."  Id.

26      A court may find a fee-shifting provision in an arbitration

27  agreement substantively unconscionable if it creates the "risk

28  of [plaintiffs] incurring greater costs than they would bear if

they were to litigate their claims in federal court." Pokorny,

601 F.3d at 1004.  The FHP requires a provider to submit a

"Settlement Proposal" before proceeding to arbitration.  FHP at

13.  If the provider does not, she waives her "right to recovery

of any attorney fees or arbitration costs" regardless of the

arbitration's outcome.  Id. at 14.  Also, even if Fox "wins" at

arbitration and receives an award from VSP, she would still have

to pay VSP's arbitration fees and costs if the arbitration award

did not exceed any settlement offered by VSP.  These rules would

not apply if Fox could simply litigate her claim in court.  The

settlement provision, like the fee-shifting provision in

Pokorny, exposes Fox to an increased risk of bearing greater

costs than if she brought the claim in court, therefore rending

the provision substantively unconscionable.

Fox argues that the FHP is substantively unconscionable for
at least four more reasons.  The Court need not address these
reasons because, for purposes of her motion for a preliminary
injunction, Fox has shown that she is likely to prevail on the
issue of whether the FHP is substantively unconscionable.  The
Court emphasizes however that its Order herein is not a final
decision on the merits of any claim at issue in this case.
Rather, the Court has simply concluded at this early stage of
the litigation that Fox has satisfied her likelihood of success
burden on this issue.

### iii. Severability

"Under California law, a court has discretion to either
sever an unconscionable provision from an agreement, or refuse
to enforce the agreement in its entirety."  Pokorny, 603 F.3d at

1005.  "In exercising this discretion, courts look to whether
the central purpose of the contract is tainted with illegality
or the illegality is collateral to its main purpose."  Id.
(internal quotation marks omitted).  A court may refuse to sever
unconscionable portions of an arbitration agreement if the
agreement is "simply too tainted to be saved through minor
adjustments."  Id.

     VSP argues the Court should sever any unconscionable
provisions and enforce the rest of the FHP.  Opp'n at 21.  Fox
can likely show the pre-appeal informal discussion, the
confidentiality, and the settlement provisions are
unconscionable.  Fox also likely can prove that
unconscionability permeates this agreement, so much so that
severing certain clauses would not cure the illegality.  The
Court finds that the offending provisions are likely not
severable and denies VSP's request.

                    2.   Irreparable Harm

     Litigants "may not obtain a preliminary injunction unless
they can show that irreparable harm is likely to result in the
absence of the injunction."  Cottrell, 632 F.3d at 1135.  "A
plaintiff must do more than merely allege imminent harm
sufficient to establish standing; a plaintiff must *demonstrate*
immediate threatened injury as a prerequisite to preliminary
injunctive relief."  Caribbean Marine Serv. Co., Inc. v.
Baldrige, 844 F.2d 668 (9th Cir. 1988).  "[M]onetary injury is
not normally considered irreparable."  L.A. Mem'l Coliseum
Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir.
1980).

Fox argues that "California law promises and requires, a 'fair, fast and cost-effective' process for resolving these kinds of disputes, and it singles out arbitration as being prohibited, because it is not a fast or cost-effective way to resolve provider billing disputes."  Mot. at 3.

Courts disagree on "whether being subjected to incur the expense associated with an otherwise non-arbitrable dispute constitutes 'irreparable injury' in and of itself, or whether the party opposing the arbitration must demonstrate that it will suffer unrecoverable economic damages." Morgan Stanley & Co., LLC v. Couch, 134 F. Supp. 3d 1215, 1235 (E.D. Cal. 2015).  The Ninth Circuit has indicated, however, that "irreparable injury presumptively . . . exist[s] if a party is required to expend resources participating in an arbitration in which it has no duty to participate." Id. (citing LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distrib., Teamsters Local 63, 849 F.2d 1236, 1241 n. 3 (9th Cir. 1988)).  Another California district court has found irreparable harm in requiring an individual to engage in a likely unenforceable arbitration agreement, stating that "a party should not be required to incur the legal expense of opposing or seeking to vacate an arbitration award that should never have been rendered in the first place." World Grp. Sec. v. Tiu, 2003 WL 26119461, at *7 (C.D. Cal. Jul. 22, 2003).  Additionally, as to an action taken by VSP that likely violated a Kentucky law, a federal court stated the provider "has a right to the benefits of statutory compliance . . . [i]njunctive relief is an appropriate remedy where one clearly threatens to violate the provisions of a state

1   statute." Dr. Mark Lynn & Assocs. PLLC v. Vision Serv. Plan

2   Ins. Co., 2005 WL 2739160, at *2 (W.D. Ky. Oct. 21, 2005).

3        Based on these authorities, the Court finds that Plaintiff

4   has established that she will suffer irreparable harm if she

5   must participate in a dispute resolution process which the Court

6   may later find illegal.

7            3.   Balance of Equities

8        Fox argues that "while [she] faces the substantial

9   inconvenience and expense of traveling across the U.S. and

10  preparing for a hearing that may well be illegal, and which

11  California does not want her to engage in, VSP faces no harm by

12  delaying the hearing until it is determined if VSP's process is

13  legal and enforceable." Mot. at 23.

14       VSP argues that the balance of equities tips in VSP's favor

15  because "[i]ssuance of a preliminary injunction in this case is

16  nearly certain to inhibit VSP's ability to engage in the

17  mandatory dispute resolution process that has been approved by

18  the California Department of Managed Health Care, and that to

19  which VSP's Network Doctors have agreed." Opp'n at 24.

20       Fox makes the stronger argument here because by granting

21  the preliminary injunction, the Court only temporarily prevents

22  the dispute resolution process from proceeding while the Court

23  determines the legality of that process. Granting an injunction

24  will not harm VSP: VSP will still have the opportunity to

25  implement its dispute resolution process if the Court finds that

26  process legal. But if the Court denies the motion for

27  preliminary injunction, Fox will have to expend considerable

28  time and resources to engage in a potentially illegal dispute

1   resolution process.

2          4.   <u>Public Interest</u>

3      When an injunction's reach is "narrow, limited only to the

4   parties, and has no impact on non-parties, the public interest

5   will be at most a neutral factor in the analysis rather than one

6   that favors granting or denying the preliminary injunction."

7   <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1138-39 (9th Cir.

8   2009) (citations omitted).  "If, however, the impact of an

9   injunction reaches beyond the parties, carrying with it a

10  potential for public consequences, the public interest will be

11  relevant to whether the district court grants the preliminary

12  injunction."  <u>Id.</u>

13     Fox argues that the public interest element is neutral

14  because this case involves a private dispute between Dr. Fox and

15  VSP.  Mot. at 23.  Yet, to the extent this case involves the

16  public interest, Fox argues that participation in the dispute

17  resolution process will preclude her from treating her patients

18  for several days.  <u>Id.</u>

19     VSP argues that "issuance of an injunction will likely

20  disrupt the ADR mechanism developed for disputes about the

21  imposition of discipline [and] likely result in increased costs

22  to policyholders as VSP, a not-for-profit entity, faces

23  increased litigation costs which it must pass on to its

24  insureds."  Opp'n at 25.

25     The Court finds the public interest element to be neutral

26  because an injunction in this dispute between VSP and Fox will

27  not likely have the drastic effects VSP suggests.

28

1         5.   <u>Bond</u>

2     Fox argues that the Court should not require a bond because

3 VSP will not suffer any monetary injury if the Court enjoins the

4 dispute resolution hearing.  Mot. at 25.  VSP has not requested

5 a bond, and the Court does not require a bond for this

6 injunction.

7

8                     III. ORDER

9     For the reasons set forth above, the Court GRANTS Fox's

10 motion for preliminary injunction.

11     IT IS SO ORDERED.

12     Dated: February 23, 2017

13

14                                JOHN A. MENDEZ,
                               UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                               26